# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

JASON SCOTT HUMPHRIES,

        Plaintiff,

v.

Case No. 6:21-cv-153-JRK

KILOLO KIJAKAZI,[1] Acting
Commissioner of Social Security,

        Defendant.
_____/

## OPINION AND ORDER[2]

### I.  Status

Jason Scott Humphries ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of severe bipolar disorder, post-traumatic stress disorder, manic depression, anxiety, chronic neck and back pain, a herniated disc in the neck and back, previously-dislocated shoulders,

---

[1]  Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]  The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 23), filed July 30, 2021; Order (Doc. No. 32), entered January 20, 2022.

and a previously-sprained right ankle. Transcript of Administrative Proceedings (Doc. No. 24; "Tr." or "administrative transcript"), filed July 30, 2021, at 106, 123, 144, 162, 399.

On February 13, 2018, Plaintiff protectively filed applications for DIB and SSI. Tr. at 327-31 (DIB), 314-19 (SSI).[3] In both applications, Plaintiff alleged a disability onset date of April 30, 2017. Tr. at 328 (DIB), 314 (SSI). The applications were denied initially, Tr. at 105-21, 139, 141, 185-87 (DIB); Tr. at 122-38, 140, 142, 188-90 (SSI), and upon reconsideration, Tr. at 143-60, 179, 181, 197-202 (DIB); Tr. at 161-78, 180, 182, 203-08 (SSI).

On February 12, 2020, the ALJ held a hearing, during which he heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 41-89 (hearing transcript); Tr. at 286-87 (appointment of representative documents). At the time of the hearing, Plaintiff was forty-six (46) years old. Tr. at 44 (stating Plaintiff's date of birth). On April 22, 2020, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 15-34.

---

[3] The DIB application was actually completed on April 9, 2018. Tr. at 328. The SSI application appears to have been completed on February 13, 2018, Tr. at 308, 311, but an application summary lists March 30, 2018 as the application date, Tr. at 314. The protective filing date for the DIB and SSI applications is listed in the administrative transcript as February 13, 2018, Tr. at 106, 144 (DIB), 123, 162 (SSI), and this date was confirmed at the hearing eventually held by an Administrative Law Judge ("ALJ"), Tr. at 46.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council. Tr. at 4-5 (Appeals Council exhibit list and order), 295 (request for review). On November 18, 2020, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, making the ALJ's Decision the final decision of the Commissioner. On January 22, 2021, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff raises as issues 1) "[w]hether the ALJ applied the correct legal standards" to the opinion of Rosemarie Cropper, D.O.; and 2) "[w]hether [Plaintiff] had a valid hearing before an ALJ who had lawful authority to hear and decide his claim based on valid legal authority." Joint Memorandum (Doc. No. 29; "Joint Memo"), filed November 4, 2021, at 12, 30.[4] After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for reconsideration of Dr. Cropper's opinion. In light of the necessity of remand, and in deference to the doctrine of constitutional avoidance, the Court need not address Plaintiff's remaining issue.

---

[4] Plaintiff has requested oral argument on this matter (Doc. No. 30), and Defendant opposes the request (Doc. No. 31). Upon review, oral argument is not necessary to decide the issues presented.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Regulations, determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 18-34. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since April 30, 2017, the alleged onset date." Tr. at 18 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease of the lumbar and cervical spine;

---

[5]   "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

4

degenerative joint disease of the right shoulder; history of bilateral shoulder dislocation; bipolar disorder and post-traumatic stress disorder." Tr. at 18 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 19 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except he can frequently operate foot controls with the left lower extremity. He can frequently climb ramps and stairs. He can occasionally climb ladders, ropes and scaffolds. He can frequently balance, kneel, crouch and crawl. He can occasionally stoop. He can frequently reach in all directions with his bilateral upper extremities. He must avoid concentrated exposure to extreme heat, humidity, and workplace hazards such as moving machinery, moving mechanical parts and unprotected heights. He can maintain adequate concentration over the course of the normal eight-hour workday to perform simple tasks. He can frequently interact with the general public and coworkers.

Tr. at 23 (emphasis omitted).

At step four, the ALJ relied on the VE's hearing testimony and found that Plaintiff "is unable to perform any past relevant work" as a "heavy equipment operator," a "tree trimmer helper," and a "power line worker." Tr. at 31 (some emphasis, capitalization, and citation omitted). The ALJ then proceeded to the fifth and final step of the sequential inquiry. Tr. at 32-34. After considering

5

Plaintiff's age ("44 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 32, such as "ticketer," "garment sorter," and "bagger," Tr. at 33 (some emphasis and capitalization omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from April 30, 2017, through the date of th[e D]ecision." Tr. at 34 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec.,

6

959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Dr. Cropper is a treating psychiatrist at the Department of Veterans Affairs ("VA"). Plaintiff argues that "[t]he ALJ failed to apply the correct legal standards to Dr. Cropper's opinion and made findings not supported by substantial evidence." Joint Memo at 16. According to Plaintiff, "[t]he ALJ's failure to properly evaluate Dr. Cropper's opinion impacted his findings at steps three, four, and five of the sequential evaluation process." Id. at 20. Responding, Defendant asserts the ALJ appropriately evaluated Dr. Cropper's opinion in accordance with the revised SSA rules and Regulations. Id. at 21-30. Further, Defendant contends the ALJ's analysis is supported by substantial evidence. Id.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18,

7

2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. § 404.1513(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). [6] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates [the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

---

[6] Plaintiff filed his DIB and SSI applications after the effective date of section 404.1520c, so the undersigned applies the revised rules and Regulations.

The following factors are relevant in an ALJ's consideration of a medical opinion: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. § 404.1520c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. § 404.1520c(b)(3).[7]

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine

---

[7] When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. § 404.1520c(b)(1).

9

whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, Dr. Cropper rendered an opinion on March 9, 2020 that, if accepted, may result in a finding that Plaintiff meets a listing at step three and most certainly would result in a more restrictive mental RFC. See Tr. at 2608-13. On a form entitled, "Review Post Traumatic Stress Disorder (PTSD) Disability Benefits Questionnaire," Dr. Cropper diagnosed: 1) "chronic PTSD following military combat"; 2) "nightmares associated with chronic PTSD"; 3) "alcohol dependence . . . in full early remission- sober 6-7 months"; 4) "cannabis dependence in remission . . . none for 1 month"; and 5) "bipolar disorder." Tr. at 2608 (some emphasis and capitalization omitted). Dr. Cropper also noted

10

Plaintiff's medical diagnoses. Tr. at 2608. According to Dr. Cropper, Plaintiff has "financial stressors" and a "history of homelessness." Tr. at 2609.

Dr. Cropper opined Plaintiff has "total occupational and social impairment" mental diagnoses and associated symptoms. Tr. at 2609 (capitalization omitted). As significant events, Dr. Cropper noted Plaintiff was "beat up" by five other Marines, and "he was almost crushed by a helicopter when it was landing." Tr. at 2610.

Dr. Cropper opined Plaintiff "experienced, witnessed or was confronted with an event that involved actual or threatened death or serious injury, or a threat to the physical integrity of self or others," and his "response involved intense fear, helplessness or horror." Tr. at 2611. She further opined Plaintiff experienced "[r]ecurrent and distressing recollections of the event, including images, thoughts or perceptions"; "[r]ecurrent distressing dreams of the event"; "[i]ntense psychological distress at exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event"; and "[p]hysiological reactivity on exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event." Tr. at 2611.

According to Dr. Cropper, Plaintiff has "[p]ersistent avoidance of stimuli associated with the trauma and numbing of general responsiveness . . . as indicated by" his "[e]fforts to avoid thoughts, feelings or conversations associated with the trauma"; "[e]fforts to avoid activities, places or people that

11

arouse recollections of the trauma"; "[r]estricted range of affection"; and "[s]ense of a foreshortened future." Tr. at 2611. Dr. Cropper also opined Plaintiff has "[p]ersistent symptoms of increased arousal, . . . as indicated by" his "[d]ifficulty falling or staying asleep"; "[i]rritability or outbursts of anger"; "[d]ifficulty concentrating"; "[h]ypervigilance"; and "[e]xaggerated startle response." Tr. at 2611.

Dr. Cropper opined that "[t]he PTSD symptoms . . . cause clinically significant distress or impairment in social, occupational, or other important areas of functioning." Tr. at 2611. Dr. Cropper further opined Plaintiff's symptoms include "[d]epressed mood"; "[a]nxiety"; "[s]uspiciousness"; "[c]hronic sleep impairment"; "[m]ild memory loss, such as forgetting names, directions, or recent events"; "[d]ifficulty in understanding complex commands"; "[i]mpaired judgment"; "[i]mpaired abstract thinking"; "[d]isturbances of motivation and mood"; "[d]ifficulty in establishing and maintaining effective work and social relationships"; "[d]ifficulty adapting to stressful circumstances, including work or a work like setting"; "[i]nability to establish and maintain effective relationships"; "[i]mpaired impulse control, such as unprovoked irritability with periods of violence"; and "[p]ersistent danger of hurting self or others." Tr. at 2612. Dr. Cropper noted other symptoms, not specifically addressed by the form, of "a high degree of anger, poor distress tolerance, [and] irritability." Tr. at 2612. According to Dr. Cropper, Plaintiff "[h]as [b]ehavioral

[f]lag on his VA chart due to inappropriate outbursts [and] behaviors towards providers." Tr. at 2612.

The ALJ found Dr. Cropper's opinion to be "not persuasive, as it is not consistent with the record overall." Tr. at 31. As relevant here,[8] the ALJ found as follows:

> This opinion is supported by Dr. Cropper's observation that [Plaintiff] has a high degree of anger, poor distress tolerance and irritability (Exhibit 13F/5). However, the majority of the form is in checkbox format. It does not quantify any degrees of the limitations, such as mild or moderate. Furthermore, the record supports a lesser degree of restriction. This opinion is not consistent with a visit with his social worker in February 2020, when [Plaintiff] endorsed a stable mood. [Plaintiff] was calm, oriented times four, and easily engaged with no signs of distress observed or reported. His mood was euthymic. Speech was a normal rate and tone. His affect was congruent. He presented with good self-hygiene and was casually dressed in appropriate attire. Thought process was linear and goal directed without any evidence of paranoia or delusional content. He was cooperative and maintained good eye contact (Exhibit 12F/23[ [9] ]). This opinion is inconsistent with an assessment, which showed that [Plaintiff's] appearance was normal. He had restless motor activity. Interpersonally, he actively participated. Speech was at normal rate, volume, and articulation. His mood was anxious and affect congruent to mood. Thought progression was normal. There was no overt evidence

---

[8] The ALJ, as permitted by the Regulations, found "not persuasive" Dr. Cropper's opinion that Plaintiff has a total occupational impairment. Tr. at 31. As the ALJ recognized, this is an opinion on the ultimate issue of ability to work, a matter reserved to the SSA. Tr. at 31 (citing 20 C.F.R. § 416.920b(c)(3)(i)).

[9] Located at Tr. at 2571.

13

> of psychotic content or trends (Exhibit 6F/201-205[10]).
> Accordingly, I find that this opinion is not persuasive.

Tr. at 31.

The ALJ erred with respect to Dr. Cropper's opinion. In finding the opinion unpersuasive, the ALJ first relied on the "checkbox" style of the form. Tr. at 31. While it is true that the form includes some checkbox style sections, Dr. Cropper provided a number of hand-written observations either to supplement her checkbox answers or completely independent of them. Tr. at 2608-13. This is not a basis in and of itself to find the opinion unpersuasive.

The ALJ also stated that the "degrees of the limitations" are not quantified into "mild or moderate." Tr. at 31. While this is also true, when read in context, those types of quantifications are not necessary to understand the opinions of the effects of Plaintiff's PTSD and other mental impairments. For example, Dr. Cropper noted a "high degree of anger" and opined about all of the symptoms associated with the mental diagnoses. Tr. at 2612. Dr. Cropper also opined about criterion that are relevant to a consideration of whether Plaintiff meets or equals a listing for a mental impairment at step three. See Tr. at 2611. Indeed, the ALJ at step three, in finding Plaintiff does not meet or equal a

---

[10] Located at Tr. at 1232-36. The ALJ cited part of a social worker note dated January 19, 2018, and part of a mental health note dated the same date. It appears the ALJ was referring to the mental health note, the entirety of which is located at Tr. at 1233-36. The entirety of the social worker note is located at Tr. at 1230-33.

14

listing, again rejected Dr. Cropper's opinion on the relevant criterion for essentially the same reasons quoted above. Tr. at 22.

The ALJ relied on one observation by a social worker dated February 28, 2020 and one mental health note dated January 19, 2018—in a transcript consisting of more than 2600 pages—in finding that Dr. Cropper's opinion was not consistent with the record. Tr. at 31 (citations omitted); see Tr. at 2571-75 (February 2020 note); Tr. at 1233-36 (January 2018 note). However, Plaintiff's presentation to the various medical personnel vastly differed depending on mood, stressors, the particular interaction, and other factors. See generally Tr. at 518-2613; cf. Simon, 7 F.4th at 1106 (citation omitted) (An ALJ may not rely on "snapshots" of how a bipolar individual is doing to discredit medical findings because the disorder is "characterized by the unpredictable fluctuation of [its] symptoms, and thus it is not surprising that even a highly unstable patient will have good days or possibly good months.").

Even one of the notes upon which the ALJ relied in finding the opinion inconsistent with Dr. Cropper's opinion, the one dated January 19, 2018, documents an "apolog[y] to [a mental health nurse] for his earlier outburst in the lobby." Tr. at 1234. And, a social worker note from that same date documents Plaintiff "became visibly upset and emotional when discussing the issue of the accrued copay balance, as evidenced by an increase in his voice volume, crying, sweaty palms, shaking, and goosebumps on his skin." Tr. at

15

1230. The ALJ's reliance on the relatively benign findings, to the exclusion of other pertinent observations by the social worker and mental health nurse, does not support the finding that Dr. Cropper's opinion is not persuasive.

In sum, the ALJ did not fully address the required factors of supportability and consistency in evaluating Dr. Cropper's opinion, and the findings that the ALJ did make are not adequate. Remand is required for the ALJ to reconsider Dr. Cropper's opinion, together with the balance of the mental health evidence.

## V.  Conclusion

In light of the foregoing, it is

**ORDERED**:

1.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)    Reconsider the opinion of Dr. Cropper, together with the balance of the mental health evidence, consistent with the applicable Regulations;

(B)    If appropriate, address the other issue raised by Plaintiff in this appeal; and

(C)    Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Standing Order on Management of Social Security Cases entered on December 7, 2021 in Case No. 3:21-mc-001-TJC (Doc. No. 43, ¶¶ 6, 8).

**DONE AND ORDERED** in Jacksonville, Florida on September 26, 2022.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record